UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM JONES,
    *Plaintiff*,

v.

NURSE TRACY C. CARDOSO, L.P.N., *et al.*,
    *Defendants*.

No. 3:24-cv-1627 (SVN)

April 7, 2025

## INITIAL REVIEW ORDER

*Pro se* Plaintiff William Jones is a pretrial detainee within the custody of the Connecticut Department of Correction ("DOC"), currently housed at Cheshire Correctional Institution.[1] Compl., ECF No. 1. Plaintiff filed this action under 42 U.S.C. § 1983 against four DOC employees who work at either Bridgeport Correctional Center ("BCC") or MacDougall Correctional Institution ("C.I."), alleging that, in December of 2021, they improperly transferred him from BCC to the "COVID Unit" at MacDougall C.I. when he did not have COVID-19, and that he contracted COVID-19 there and became quite sick. The Defendants are BCC Nurse Tracy C. Cardoso, L.P.N., BCC Lieutenant John Doe, MacDougall C.I. Nurse Heather Jane McHugh, A.P.R.N.,[2] and MacDougall C.I. Nurse Mikal French. *Id.* at 3. Plaintiff seeks damages and for Defendants to be fired. *Id.* at 5.

---

[1] Plaintiff was last admitted to DOC custody on April 21, 2021, and he is still unsentenced. This information is gleaned from review of the publicly available DOC website.
*See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=235297 (last visited Apr. 7, 2025). The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).
[2] Plaintiff also refers to Defendant McHugh as a "Medical Supervisor." *See* ECF No. 1 ¶ 5.

1

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.[3]

I.  **FACTUAL ALLEGATIONS**

The Court does not include herein all of the allegations from the complaint but summarizes the facts to provide a context to this initial review.

On December 18, 2021, Plaintiff was housed at BCC. *See* ECF No. 1 ¶ 1. While Plaintiff was in his cell, an unknown officer advised him that he heard a medical officer and a lieutenant talking about transferring Plaintiff to the COVID Unit at MacDougall C.I. *Id.* Plaintiff alleges that the individuals he overheard stated that they wanted Plaintiff "out of BCC" due to Plaintiff "writing complaints." *Id.* An hour later, Defendant Nurse Cardoso required Plaintiff to take a rapid COVID-19 test, which was negative. *Id.* ¶ 2.

---

[3] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (cleaned up; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Two hours later, Defendant Lieutenant John Doe and several other officers came to Plaintiff's cell with a hand-held camera and asked him why his property was not packed, because the transport had arrived to take him to the COVID Unit. *Id.* ¶¶ 3, 13. After Plaintiff asked why he was being transferred to the COVID Unit following his negative test, Lieutenant John Doe simply stated, "Let's go." *Id.* ¶ 3.

After he arrived at the MacDougall C.I. COVID Unit that same day, Plaintiff was seen by Defendant Nurse French. *Id.* ¶ 4. Plaintiff informed Nurse French that he did not know why he had been transferred to the COVID Unit, as he had not had a positive test, did not feel sick, and had not told anyone he was sick. *Id.*

The next day, Plaintiff advised several medical staff members that he was not sick and he did not know why he was in the COVID Unit. *Id.* They indicated that only a supervisor could answer that question. *Id.* An unidentified lieutenant told Plaintiff to obtain his medical records because the lieutenant did not know why Plaintiff was in the COVID Unit. *Id.* The staff member told Plaintiff he could not control when Plaintiff left the Unit, but could control how Plaintiff was housed. *Id.* The lieutenant moved Plaintiff's cellmate, so that Plaintiff had a single cell. *Id.*

On December 22, 2021, Plaintiff informed Defendant Nurse McHugh that he was not sick and did not feel sick, and he asked why he was in the COVID Unit. *Id.* ¶ 5. She told him he had to stay for fourteen days. *Id.*

Plaintiff was seen by staff every day that he remained in the COVID Unit, and "con[]stan[t]ly" told the staff that he was not sick. *Id.* ¶ 6.

Plaintiff was finally released from the COVID Unit and returned to BCC on January 1, 2022. *Id.* ¶ 7.

On January 2, 2022, Plaintiff woke up feeling sick at BCC. *Id.* ¶ 8. He alleges he could not have been exposed to any illness at BCC because the facility was on lockdown. *Id.* Medical staff determined that Plaintiff had a high temperature and strep throat. *Id.* ¶ 9.

On January 4, 2022, Plaintiff tested positive for COVID-19 after complaining that he was sick and did not feel well. *Id.* On January 5, 2022, Plaintiff was transferred back to the MacDougall C.I. COVID Unit. *Id.* ¶ 10. The next day, his symptoms worsened. *Id.* ¶ 11. Plaintiff could not breathe; had a bad cough, headache, and runny nose; and had no appetite. *Id.*

## II.  DISCUSSION

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). Plaintiff seeks damages from each Defendant for violation of his constitutional rights under 42 U.S.C. § 1983. Although Plaintiff does not specify in what capacity he sues Defendants, to the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

4

      A.  <u>Fourteenth Amendment Deliberate Indifference</u>

As Plaintiff was a pretrial detainee at the time of the alleged events in December of 2021 and January of 2022, Plaintiff's claims concerning correctional staff's deliberate indifference to his health and safety are governed by the Fourteenth Amendment, rather than the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference); *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (excessive force); *see also Charles v. Orange Cnty.*, 925 F.3d 73, 85-86 (2d Cir. 2019) (pretrial detainee medical indifference claims fall under the Fourteenth Amendment).

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two prongs: (1) an objective prong, which requires a plaintiff to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a subjective or "*mens rea*" prong, which requires a plaintiff to show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. With respect to the first prong of a deliberate indifference claim, the plaintiff must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Id.* at 30. With respect to the second prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

*1. Indifference to Health and Safety or Failure to Protect (Defendant Doe)*

Plaintiff appears to assert that Defendant Lieutenant Doe acted with indifference to his risk of harm when he transferred Plaintiff to the COVID Unit at MacDougall C.I., despite that Plaintiff was not sick. ECF No. 1 ¶ 13. He alleges that Lieutenant Doe failed to check with the medical unit about the reasons for the transfer, after Plaintiff advised him of his negative COVID-19 test. *Id.* Drawing reasonable inferences in Plaintiff's favor, his allegations suggests that Doe's failure to confirm the negative test resulted in Plaintiff being transferred to the COVID Unit and contracting COVID-19 there.

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). For purposes of initial review, the Court assumes that the COVID-19 virus is a highly dangerous disease posing a significant risk of severe illness and death. *See Gil-Cabrera v. Dep't of Corrs.*, No. 1:20-CV-9493 (LTS) (SDA), 2021 WL 5282620, at *4 (S.D.N.Y. Sept. 27, 2021), (noting it is "common knowledge" COVID-19 is a "highly dangerous disease that poses a significant risk of severe illness and death"), *report and recommendation adopted sub nom. Gil-Cabrera v. City of New York*, No. 20-CV-9493 (LTS) (SDA), 2021 WL 5910055 (S.D.N.Y. Dec. 14, 2021). Plaintiff complains that Lieutenant Doe failed to check with the medical unit about the reasons for the transfer, after Plaintiff advised him of his negative COVID-19 test. ECF No. 1 ¶ 13. Although thin, Plaintiff's allegations are sufficient for purposes of initial review to proceed for damages on his claims of Fourteenth Amendment indifference against Lieutenant Doe in his individual capacity.

*2. Medical Indifference (Defendants Cardoso, French, and McHugh)*

The Court construes Plaintiff's complaint to assert claims of deliberate indifference to medical needs against Defendants Nurse Cardoso, Nurse French, and Nurse McHugh. The

6

Fourteenth Amendment standard set forth in *Darnell* applies also to a pretrial detainee's claims involving a deliberate indifference to medical needs. *See, e.g.*, *Charles*, 925 F.3d at 85–86; *Roice v. Cnty. of Fulton*, 803 F. App'x 429, 430, 432 (2d Cir. 2020) (summary order) (applying Fourteenth Amendment standard to pretrial detainee's medical indifference claims).

Plaintiff's allegations are sufficient to support an inference that Nurse Cardoso ignored the obvious risk of harm posed by transferring Plaintiff to the COVID Unit, despite his negative COVID test. Accordingly, Plaintiff may proceed for further development of the record on a Fourteenth Amendment indifference claim against Nurse Cardoso in her individual capacity.

Plaintiff cannot proceed with his medical indifference claim against Nurse French, however. Plaintiff complains that Nurse French never should have allowed him to be housed in the COVID Unit after being advised that Plaintiff had not tested positive for the virus and did not feel sick when he arrived at MacDougall C.I. He also alleges that medical staff advised him that only a medical supervisor could answer why he had been transferred to the COVID Unit. But Plaintiff does not allege facts to suggest that Nurse French had any authority to change the decision to transfer Plaintiff to the COVID Unit or to secure him a release from the COVID Unit. Absent facts indicating that Nurse French had the capacity to do so but failed to take such actions, Plaintiff's complaint fails to suggest that Nurse French acted with any indifference to his medical needs. *See Davis v. Supervisor*, No. 3:21-cv-648 (SVN), 2022 WL 3681558, at *6 (D. Conn. Aug. 25, 2022) (dismissing claims against defendant where there was no indication that she could have provided him with more timely treatment or provision of his medication); *Blaine v. Burnes*, No. 3:20-cv-1039 (KAD), 2020 WL 5659101, at *7 (D. Conn. Sept. 23, 2020) (dismissing claim against defendant where alleged facts failed to suggest that she had an ability to ensure Plaintiff was provided with certain medical treatment).

Finally, as to Defendant Medical Supervisor McHugh, Plaintiff alleges that he met with Medical Supervisor McHugh on December 22, 2021, when she advised him that he had to remain in the COVID Unit for fourteen days despite that he did not feel sick. Although the Court will liberally construe Plaintiff's complaint to allege that McHugh had the ability to cause Plaintiff to be transferred out of the COVID Unit given her supervisory status and Plaintiff's allegation that McHugh had the authority to direct him to stay in the Unit for fourteen days, Plaintiff has not alleged facts indicating that McHugh was aware that he had previously tested negative prior to his transfer or that he had not been exposed to COVID during his three full days in the COVID Unit. Accordingly, the Court cannot conclude that McHugh acted with deliberate indifference by requiring Plaintiff to remain in the COVID Unit.

The Court therefore dismisses Plaintiff's Fourteenth Amendment medical indifference claims against Nurse French and Medical Supervisor McHugh. The Fourteenth Amendment medical indifference claim against Nurse Cardoso may proceed.

  B. <u>First Amendment Retaliation</u>

Next, the Court considers whether Plaintiff has stated a First Amendment claim for retaliation. Plaintiff alleges an unidentified officer advised him that he overheard Lieutenant Doe "and medical" discussing a plan to transfer Plaintiff out of BCC for writing complaints. ECF No. 1 ¶ 1.

When prison officials take adverse action against an inmate that is motivated by the inmate's exercise of a protected constitutional right, the inmate may bring a section 1983 retaliation claim against those prison officials. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or

federal laws."). To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). District courts must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir. 2003).

The filing of a grievance or legal action constitutes protected activity under the First Amendment. *Dolan*, 794 F.3d at 294 (retaliation for a plaintiff's filing of grievances violates constitutional right to petition); *Booth v. Comm'r of Corr.*, No. 3:19-CV-100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity."). Accordingly, Plaintiff's allegations are sufficient to satisfy the first element.

The Second Circuit has defined adverse action as retaliatory conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020). Plaintiff's allegations that he was transferred for a fourteen-day period to the COVID Unit—where his exposure to the COVID virus was likely—are sufficient to satisfy the second element of adverse action.

But Plaintiff has not alleged facts to satisfy the third element of causation. He has not alleged facts to support an inference that Nurse Cardoso, Lieutenant Doe, or any other Defendant was aware of Plaintiff's protected activity and thereby motivated to take retaliatory action by transferring him to, or retaining him in, the COVID Unit. *See Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *4 (D. Conn. Jan. 10, 2020) (dismissing retaliation claims where

9

plaintiff had not alleged that the defendant was aware of his protected activity). It is not clear from Plaintiff's allegation—that "they wanted [him] out of BCC for writing complaints," ECF No. 1 ¶ 1—whether the unidentified officer overhead Lieutenant Doe and "medical" discussing Plaintiff's complaints as a reason for the transfer, or whether Plaintiff is simply stating his assumption that "they" wanted him transferred out of BCC for filing complaints. Nor does Plaintiff provide any details about what complaints he filed, whether such complaints addressed conduct by Lieutenant Doe such that Doe may have had knowledge of them, or when he filed the complaints, such that an inference of causation could be drawn from the temporal proximity between the filing of the complaints and Plaintiff's transfer to the COVID Unit.

Thus, the Court concludes Plaintiff has not sufficiently alleged a plausible claim of First Amendment retaliation.

C. <u>Injunctive Relief</u>

In addition to seeking damages, Plaintiff also requests injunctive relief in the form of an order terminating Defendants' employment with DOC. A plaintiff may not seek injunctive relief against a state official in their individual capacity, as Defendants would be unable to provide such injunctive relief in their individual capacity. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011).

And Plaintiff may only proceed with injunctive relief against a defendant in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Thus, injunctive relief afforded by a

court must be narrowly tailored and proportional to the scope of the violation, and extend no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011).

Here, Plaintiff's allegations describe only alleged constitutional violations that occurred in the past, and do not suggest that he is subject to any ongoing constitutional violation. Thus, Plaintiff's request for official capacity injunctive relief must be dismissed.

## ORDERS

For the foregoing reasons, the Court enters the following orders:

Plaintiff may proceed on his individual capacity claims based on:

(1) Fourteenth Amendment violation for indifference to Plaintiff's risk of harm from exposure to the COVID-19 virus against Lieutenant Doe, in his individual capacity; and

(2) Fourteenth Amendment violation for medical indifference to Plaintiff's risk of harm from exposure to the COVID-19 virus against Nurse Cardoso, in her individual capacity.

All other claims, including official capacity claims, are DISMISSED without prejudice. Defendants Nurse French and Nurse McHugh are DISMISSED from this action.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Lieutenant Doe and Nurse Cardoso, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **May 7, 2025**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. After Plaintiff files this notice, the Court will begin the effort to serve process on Nurse Cardoso in her individual capacity as described above.

**Doe Defendant.** The Court will only be able to serve process on Lieutenant Doe if Plaintiff provides the Court with Lieutenant Doe's name and place of employment. Plaintiff will have

ninety (90) days from the appearance of counsel for Nurse Cardoso in this action to file a notice identifying Lieutenant Doe by first and last name. Plaintiff may determine the identity of Lieutenant Doe by reviewing his materials and/or by sending a discovery request to Nurse Cardoso, once she appears through counsel or a notice of *pro se* appearance.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **May 7, 2025**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any Defendant.

If the Court receives no response from Plaintiff by **May 7, 2025**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1 requires that Plaintiff **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification

of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

    **SO ORDERED** at Hartford, Connecticut, this 7th day of April, 2025.

                                          */s/ Sarala V. Nagala*
                                          SARALA V. NAGALA
                                          UNITED STATES DISTRICT JUDGE